Argued December 14, 1932; affirmed January 24, 1933

# STATE FOR USE OF JONES *v.* FEAK ET AL.

### (18 P. (2d) 203)

*Jas. L. Conley,* of Portland (A. G. Fletcher, of Portland, on the brief), for appellant.

*Arthur H. Lewis,* of Portland (Lewis, Lewis & Finnigan, of Portland, on the brief), for respondent.

BEAN, J.   The decision in this case depends on the construction to be placed upon the following provisions of the bond:

"Now, therefore, if the principal herein shall faithfully and truly observe and comply with the terms, conditions and provisions of the said contract, in all respects, and shall well and truly and fully do and perform all matters and things by him undertaken to be performed under said contract, upon the terms proposed therein, and within the time prescribed therein, or as extended as provided in the general provisions; * * * and shall promptly pay all laborers, mechanics, subcontractors and materialmen, and all persons who shall supply such laborers, mechanics or subcontractors with material, supplies or provisions for carrying on such work, and all just debts, dues and demands incurred in the performance of such work; * * * and shall in all respects faithfully perform said contract according to law, then this obligation is to be void, otherwise to remain in full force and effect."

The sections of the code under which the bond was given, in so far as their provisions are applicable to the controversy herein, read as follows:

Section 49-701. "Every contract made with the state, * * * shall contain a condition that the contractor shall promptly, as due, make payment to all persons supplying to such contractor labor or material for the prosecution of the work provided for in such contract * * * and a penal bond, with good and sufficient sureties, shall be required of each and every such contractor to secure the faithful performance of all the usual or particular obligations of such contract, especially the conditions herein mentioned * * *."

Section 67-1101. "Hereafter any person * * * entering into a formal contract with the state of Oregon * * * for the construction of any building, or the prosecution and completion of any work, or for

repairs upon any building or work, shall be required before commencing such work to execute the usual penal bond with good and sufficient sureties, with the additional obligations that such contractor or contractors shall promptly make payments to all persons supplying him or them labor or materials for any prosecution of the work provided for an [in] such contracts. * * *"

The assignments of error present one clear-cut question: Does such unloading, dismantling and hauling of the steam shovel for 90 miles and reassembling of the contractor's equipment at a cost of $799.30 constitute "labor * * * for any prosecution of the work provided for in such contract?"

The appellant requested appropriate findings, according to its theory of the case, and assigns error of the court in making findings and rendering judgment in favor of the plaintiff and in failing to find as requested by appellant.

The appellant contends, in effect, that the dismantling, unloading, hauling and assembling of the steam shovel was not labor for the prosecution of the work, for the principal reason that, under the mechanic's lien statute, the hauling and transportation of the contractors' tools and appliances to and from the job is not "performing labor upon or furnishing material or transporting or hauling any material of any kind to be used in the construction, alteration or repair of any building," and therefore is not within the statute. Citing *Allen v. Elwert*, 29 Or. 428 (44 P. 823, 824); *Stewart v. Spalding*, 71 Or. 310 (141 P. 1127).

We start with this condition: the contractor had at the end of the railroad at Condon, Oregon, this large steam shovel, which was necessary for him in order to

carry on the construction work on the highway in accordance with his contract, and, in order to be available, the shovel must of necessity be moved from the cars at Condon to the highway at Kimberly, a distance of 90 miles. If the shovel had not been so transported by the relator or some one for the contractor it would have been practically impossible for the contractor to prosecute the work provided for in his contract, and we think such labor was within the protection of the statute.

Neither the bond in question nor sections 49-701 and 67-1101 are governed by exactly the same rules of construction as the mechanic's lien statute.

In *State ex rel. Trojan Powder Co. v. Johnson Contract Co.,* 120 Or. 633 (253 P. 520), cited by appellant, there were involved 30 cases of powder worth $244 which were furnished to the subcontractor under a contract, but which were diverted by the subcontractor and not used for the prosecution of the work under the contract. The decision in that case is absolutely correct. *State ex rel. Hagquist v. United States Fidelity & Guaranty Co.,* 125 Or. 13 (265 P. 775), also cited by appellant, was an action on a contractor's bond given to secure the performance of a highway contract, in which it was claimed that the surety for the contractor was liable to the relator on account of sums of money loaned to the contractor, and it was held that the loan of the money was not protected by the bond. The two cases mentioned are not analogous to the case at bar.

The language of the public improvement bonding act is that the contractor shall promptly make pay-

ments to all persons supplying him labor or material for any prosecution of the work provided for in the contract. Under such bond and statute this court has held that one furnishing rental of equipment, meats and groceries to feed contractors' laborers, feed for horses, for mules used in the work, incidental repairs to equipment, gas, oil and lubricating outfits and drawing of plans, for the prosecution of the work provided in a public contract, was protected by the bond: *Portland v. O'Neill*, 98 Or. 162 (192 P. 909); *Multnomah County v. United States Fidelity & Guaranty Co.*, 87 Or. 198 (170 P. 525, L. R. A. 1918C, 685); 44 A. L. R. 383; *Columbia County v. Consolidated Contract Co.*, 83 Or. 251 (163 P. 438); *Brogan v. National Surety Co.*, 246 U. S. 257 (38 S. Ct. 250, 62 L. Ed. 703, L. R. A. 1918D, 776); 65 A. L. R. 260; *City Trust, Safe Deposit & Surety Co. v. United States*, 147 Fed. 155; *United States v. Port Deposit Quarry Co.*, 272 Fed. 698; *United States v. Lowrance*, 252 Fed. 122; *Title, Guaranty & Trust Co. v. Crane Co.*, 219 U. S. 24 (31 S. Ct. 140, 55 L. Ed. 72); *United States v. Columbus Circle Const. Corp.*, 284 Fed. 155; *State v. Southern Surety Co.*, 221 Ala. 113 (127 So. 805, 70 A. L. R. 296).

Under the public improvement bonding act it is not necessary that the labor or material become incorporated into the improvement. It is sufficient if it was furnished for "any prosecution of the work."

In *Multnomah County v. United States Fidelity & Guaranty Co.*, supra, we find the following:

"As declared by Judge Putnam in American Surety Co. v. Lawrenceville Cement Co., 110 Fed. 717, 721, 'the statute in question concerns every approximate relation of the contractor to that which he has contracted to do.'"

In *Clatsop County v. Fidelity & Deposit Co., of Maryland,* 96 Or. 2, at page 7 (189 P. 207), we find the following:

"The law was intended for the benefit of the individual assisting in the furtherance of the undertaking, and also for the benefit of the public. It should be given a liberal construction in order to carry out the legislative intent. * * *

"Without taking into consideration the extra statutory words contained in the bond in suit in the present case, those things which are necessary in the prosecution of the work provided for in the contract are protected as 'labor and materials,' although such supplies are not physically incorporated into the work."

To the same effect see *Portland v. O'Neill,* supra; *Fitzgerald v. Neal,* 113 Or. 103 (231 P. 645).

In the case of *State ex rel. Sinclair Provision Co. v. Warren Construction Co.,* 129 Or. 58 (276 P. 260), after referring to the case of *State ex rel. Hagquist v. United States Fidelity & Guaranty Co.,* supra, this court said:

"In Fitzgerald v. Neal, 113 Or. 103 (231 P. 645), where a bond identical in terms with the one at bar was involved, it was held that the condition contained in the bond that the contractor 'shall promptly pay all laborers, mechanics, subcontractors and materialmen and all persons who shall supply such laborers, mechanics or subcontractors with material, supplies or provisions for carrying on such work, and all just debts, dues and demands incurred in the performance of such work,' did not enlarge the obligations of the surety beyond those required by the statute and, for that reason, the original contractor could not bind his surety to pay nor was the surety obligated to pay for any material or labor unless the same was furnished for the prosecution of the work which the contractor had contracted to perform."

In the case of *American Surety Co. v. Lawrenceville Cement Co.*, 110 Fed. 717, we find the following language:

"In using the expression which we have quoted from the statute and the bond, there can be no question that congress had somewhat in mind statutes in various states giving liens on buildings * * *, while in the statute under discussion the expression is broader, namely, 'in the prosecution of the work.' The underlying equity of the lien statutes relates to a direct addition to the substance of the subject-matter of the building, or other thing, to which the lien attaches, while the statute in question concerns every approximate relation of the contractor to that which he has contracted to do. Plainly, the act of congress and the bond in the case at bar are susceptible of a more liberal construction than the lien statutes referred to, and they should receive it."

See, also, *Portland v. New England Casualty Co.*, 78 Or. 195 (152 P. 253).

In the case of *Multnomah County v. United States Fidelity & Guaranty Co.*, supra, the position taken by the defendant was that the payment for the rent of a caterpillar engine was not provided for in the contract and bond under the terms of the statute. It was held that the enactment under consideration, the bonding act, has a different purport and broader meaning than the ordinary lien statutes, and that the latter afford but little assistance in arriving at the intent of the former. See, also, *Franzen v. Southern Surety Co.*, 35 Wyo. 15 (246 P. 30, 46 A. L. R. 496).

In *United States v. Hercules Co.*, 52 Fed. (2d) 451, it is held, in effect, that transportation charges "which do not affect reasonable cost or fair value, and are incurred merely for labor or material used in moving

the property out to work after it has reached its general destination, or in removing it from one part of the job to another, or, in other words, whatever may fairly be deemed labor or material used exclusively in the prosecution of the work solely under the particular contract, is protected by the bond,'' regardless of whether its original cost is considered labor or material furnished the contractor.

The law requires the contractor and surety to pay for all labor or material used for any prosecution of the public work provided for in the contract. It concerns those things necessary to carry on the work, although not actually incorporated in the improvement.

Appellant contends that the services of the relator were practically freight charges and that freight charges by common carriers are not within the terms of the bond. The relator is a private contract carrier engaged in the business of hauling and transporting materials and equipment for hire. He has no stated run; he is at liberty to carry or not to carry, as he deems best; he may go where and when he wishes; he is a private individual and is invested, like all other persons, with the right to make his own contracts. His business is not similar to the business of a common carrier, such as a railroad or truck line.

In the case of *City of Stuart v. American Surety Co.*, 38 Fed. (2d) 193, the circuit court of appeals for the fifth circuit thoroughly covers the question of the effect of a common possessory lien on the right to sue on a bond. The syllabus in that case reads:

''Freight, switching, and demurrage charges on carload material used in performance of contract with city for public work *held* within liability assumed un-

der contractor's bond required by Comp. Laws Fla. 1927, § 5397, which bound surety to 'prompt payment to any person or persons doing work or furnishing skill, tools, machinery or materials under and for the purpose of such contract.' "

In that case it was held:

"In what way can the distance of the transportation or the fact that it is over a specially prepared rail track make it any the less labor?"

In the present case the relator added nothing to the machine which could be taken to another job. His labor had one object in view and that was to place the machine in the proper place for the prosecution of the work provided for in the contract and bond. It was a part of the cost of the highway construction included in the contract, which contract was supported by the bond. If the steam shovel at Condon had then been near the highway to be constructed, it is doubtful if the labor of unloading and moving it a short distance and installing the same would have been questioned as being protected by the bond. Since it was necessary to move the shovel a distance of 90 miles, the expense of such moving and the expense of the construction of the highway was simply increased, but that did not change the nature of the work. The transporting of the steam shovel, in order to enable the contractor to prosecute the work under the contract, accelerated the construction just as effectively as the labor of the man who operated the shovel on the ground. The relator's labor was directly connected with the work of construction and was essential thereto. It fairly comes within the meaning and spirit of the words "supplying him or them labor and material for any prosecution of the work." It was nominated in the bond.

The cases to which we have been referred are like those in most cases, not entirely harmonious.

Under our statute as construed by the opinions of this state and cases in other jurisdictions, the judgment of the circuit court should be affirmed. It is so ordered.

Rossman and Belt, JJ., concur.

Rand, C. J., dissents.