PROVIDENCE PIPE & SPRINKLER COMPANY *vs.* THE AETNA CASUALTY & SURETY COMPANY.

MARCH 5, 1943.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker & Condon, JJ.

Moss, J. This is an action of debt, brought against the surety, on a bond given to the town of Smithfield in this state by Joseph P. Flynn, a building contractor who built a town hall for that town under a contract which was entered into between them and the performance of which by him was secured by that bond. The plaintiff is a corporation which, under a contract between it and the subcontractor who installed the plumbing and heating equipment in the building

under a subcontract between him and the general contractor, furnished certain materials and delivered them at the building site. These materials were used by the subcontractor in the performance of his subcontract; but the plaintiff never received payment of the sum of $252.87 owed to it by this subcontractor for these materials, although the contractor had paid the subcontractor therefor.

After a trial before a justice of the superior court, sitting without a jury, a decision was rendered by him for the defendant; and the case is now before us on a bill of exceptions filed by the plaintiff, the only exception specified therein being to this decision, on the ground that it "was erroneous and should be reversed."

All the facts upon which the case was heard and decided in the superior court were set forth in an agreed statement of facts, read into the record at the trial, and in the documents referred to therein and filed as exhibits in the case. This statement is as follows:

"I. On December 28, 1938, the Town of Smithfield, Rhode Island, entered into a written contract with Joseph P. Flynn of Providence, Rhode Island, for the construction of a Town Hall. Joseph P. Flynn, the contractor, executed a performance bond to said Town with the defendant as surety thereon. A duplicate original of said contract and said bond is herewith submitted in evidence and marked, 'Exhibit A'. Joseph P. Flynn engaged E. H. Conway, as a subcontractor, to furnish the plumbing and heating system on the job including all material and labor therefor at an agreed price, and the payment by said contractor Flynn to his subcontractor Conway is not questioned or an issue in these proceedings.

"II. Said E. H. Conway, the plumbing and heating subcontractor, bought certain materials for the job from the Providence Pipe & Sprinkler Company, the plaintiff in this action. These materials purchased by said Conway from said plaintiff were installed in the Smithfield Town Hall. Neither defendant nor said contractor Flynn had notice or knowledge that said materials were acquired by said Conway from said plain-

tiff. That said Conway has not paid plaintiff the sum of $252.87, the price which Conway agreed with plaintiff to pay for said materials, the items of which are admitted in evidence as 'Exhibit B.' That at the time Conway bought these materials, the plaintiff extended its credit to Conway only and without knowledge of or reliance upon the bond given by the general contractor Flynn and defendant to said Town of Smithfield.

"III. It is further agreed that the sole issue to be determined is whether plaintiff can maintain its instant common law action against defendant and recover from said defendant, as surety upon said bond, a judgment in the amount of the price of the materials purchased by said E. H. Conway, the subcontractor, from said plaintiff.

"IV. It is further agreed that the bond upon which plaintiff brings this action against defendant is a common law bond not affected or controlled by any statutory requirement. That said Town of Smithfield, said Joseph P. Flynn and said defendant were the only parties who executed said bond and said general contract for the performance of which said bond was given. That the Town Hall belongs to and is located on land of the Town of Smithfield. That said Town Hall was completed and said contractor Flynn was duly paid for said contract and in turn paid all his subcontractors in full before either said contractor Flynn, said Town of Smithfield or said defendant had notice or knowledge of the claim of said plaintiff represented in this action. That although P. W. A. funds were used by said Town, the State of Rhode Island and the United States of America were not parties to this contract and bond and that this action is governed by common law principles."

We see no need of quoting the contract, as the plaintiff's right of recovery must depend upon the language of the bond, which was in the usual form of a bond in a penal sum with surety and a defeasance clause, the defendant herein being the surety. The only parts of the bond which are relevant to the questions at issue in this case are as follows:

"Now, therefore, if the said Principal shall well and truly keep, perform and execute all the terms, conditions and stipulations of said contract according to its pro-

visions on his or its part to be kept and performed . . . and the said Principal shall promptly pay for all materials furnished and labor supplied or performed in the prosecution of the work included in and under the aforesaid contract whether or not the material or labor enters into and becomes a component part of the real asset and shall indemnify and reimburse the Obligee for any loss it may suffer through the failure of the Principal to faithfully observe and perform each and every obligation and duty imposed upon the Principal by the said contract, at the time and in the manner therein specified, then this obligation shall be null and void, otherwise it shall remain and be in full force and effect. . . .

"This Bond is made for the use and benefit of all persons, firms and corporations, who may furnish any material, insurance, social security, unemployment compensation, or perform any labor for or on account of said contract, or rent or hire out any appliances and equipment used or employed in the execution of said contract, and they and each of them are hereby made obligees hereunder the same as if their own proper respective names were written herein as such, and they and or each of them may proceed to sue hereon provided however, that the state shall not be liable to furnish counsel nor for the payment of any costs or expenses of any such suit."

The plaintiff contends that the language above quoted from the defeasance clause of the bond, viz.: ". . . the said Principal shall promptly pay for all materials furnished . . . in the prosecution of the work", not only means that the contractor shall pay for such materials to the one who, under a subcontract with *him*, has furnished materials which have gone into the performance of the principal contract; but that it also means that the contractor shall be responsible, for the payment for materials, to any materialman that under a contract with the subcontractor has furnished to the latter such materials, which the latter, in the performance of his subcontract, has incorporated in the work covered by the general contract and for which he has been paid by the contractor but for which he has not paid the materialman.

The plaintiff contends that this is so, even though the contractor paid the subcontractor in full, when neither the contractor nor his surety had any knowledge or notice that the subcontractor had bought such materials from the plaintiff, and even though the plaintiff had sold the materials to the subcontractor in reliance solely on the latter's credit and without knowledge of or reliance upon the contractor's bond.

The bond in this case is not governed by any statutory requirement and therefore the case differs vitally from cases involving bonds which are so governed. Moreover, as the contract here is for the construction for a town of a town hall, on real estate belonging to the town, there can be no mechanics' or materialmen's liens on that real estate. This fact also should be taken into consideration in construing the provisions of the bond, which is intended to protect the interests of at least some of the persons or corporations that furnish labor or materials for the construction of the building and that would have protection under the mechanics lien law, if the building were being constructed for a private owner of the land.

The only Rhode Island case that is cited by either of the counsel in this case as throwing any light upon the question of the proper construction of the bond involved herein is *United States Fidelity & Guaranty Co. v. Rhode Island Covering Co.*, 53 R. I. 397, which is cited by both of them. That was a suit in equity, begun by a bill in the nature of a bill of peace, to settle a controversy as to the liability and rights of the various parties under a bond given by the respondent Anastos to the respondent city of Providence, with the complainant as surety thereon, to secure his performance of a contract by him to provide an entire system of plumbing, drainage, and gas piping for a certain city high school. The other respondents were the Industrial Trust Company, a creditor of Anastos which had attached the indebtedness payable to him by the city under the contract, and various subcontractors and materialmen who had furnished materials used by him in the performance of the contract.

It was decided by the decree of the superior court in that case that the rights of the subcontractors and materialmen in the indebtedness of the city to Anastos under the contract had priority over any rights which his attaching creditor had in such indebtedness. The case then came before this supreme court on the appeal by the trust company from this decree; and the appeal was denied and the decree affirmed.

The pertinent condition of the bond in that case was that Anastos should "pay for all labor performed or furnished and for all materials used in the carrying out of said contract." This court says, on page 402: "This language is clear and unambiguous. The bond was undoubtedly intended to operate for the benefit of such persons as should furnish labor or materials for the erection of the school building." In the next paragraph this court says: "By the weight of the authorities in the United States, such a surety contract or bond imposes on the surety the obligation of paying materialmen and subcontractors"; and it cites three cases from other states, an annotation in 77 A. L. R. and an article in 38 Yale Law Journal in support of this statement.

Since, for all that appears in the opinion, no materialman or subcontractor involved in that case had any claim except under a contract directly with the general contractor, the case is not an authority in favor of the plaintiff in the instant case. But it is equally true that it is not an authority in favor of the defendant in the instant case.

We have examined the three cases which are cited in the opinion in that case as supporting the conclusion reached therein. We find that they support that conclusion, but that none of them is helpful to us in deciding the instant case, since in none of them were involved the rights of anyone who had furnished to a *subcontractor* labor or materials which were used in the performance of the subcontract. We have also examined the cited article in the Yale Law Journal and the cited annotation in 77 A. L. R. and find that neither of them has any application to the issue involved in the instant case.

The trial justice in the instant case cited three cases as supporting his decision for the defendant. The first of these is *Berger Mfg. Co.* v. *Lloyd,* 209 Mo. 681, which is strongly relied on in the defendant's brief filed in this court. In that case the defendant Lloyd had entered into a contract with the board of education of the city of St. Louis for the erection of a schoolhouse and had given to the board a bond, with sureties thereon, conditioned that he would faithfully perform the contract and would make payment to all those furnishing materials used in the work provided for in the contract and for all labor performed in the work, whether by subcontract or otherwise.

He entered into a subcontract with the Quernheim Sheet Metal Works Company, covering the metal work to be done under the general contract; and under this subcontract that company furnished the galvanized iron and solder called for by the general contract, buying them from the plaintiff, and was paid for them by the general contractor, but never paid the plaintiff for them. The court held that on these facts the plaintiff could not recover for these materials in this action on the general contractor's bond and said: "If Lloyd is liable under the bond to plaintiff for materials it sold to the Metal Company then under the same process of reasoning he would also be liable to the jobber or manufacturer who sold the materials to the plaintiff and so on *ad infinitum,* and he and his sureties would never reach the end of their liability." This case supports the decision of the trial justice in the instant case.

The second case cited by him is *State* v. *Warren Construction Co.,* 129 Or. 58. In that case a contractor had entered into a contract with the state, represented by its highway commission, for the repair of certain highways, and for the performance of that contract had given to the state a surety bond which contained a condition that the contractor "shall promptly pay all laborers, mechanics, subcontractors and materialmen, and all persons who shall supply such laborers, mechanics or subcontractors with material, supplies or pro-

visions for carrying on such work, and all just debts, dues and demands incurred in the performance of such work." The action was brought by the relator, in the name of the state, against the contractor and surety for an alleged breach of that condition.

The contractor had entered into a contract with one Ross in which it was stipulated that Ross should operate a commissary camp and should furnish meals to the laborers engaged in the performance of the work covered by the contract, at a stipulated price for each meal. While engaged in performing that contract, Ross had purchased from the relator the meat and provisions for which the relator sought to recover payment in the action. Ross had been paid in full. In the opinion it was held that the relator could not recover on the bond.

In reaching that conclusion the court emphasized an Oregon statute in which it was provided that any person entering into a formal contract with the state for the prosecution and completion of any work "shall be required before commencing such work to execute the usual penal bond, with good and sufficient sureties, with the additional obligations that such contractor or contractors shall promptly make payments to all persons supplying him or them labor or materials for any prosecution of the work provided for in such contracts." It held that Ross was a mere materialman, evidently treating him as not a subcontractor, in the sense in which that term was used in the condition of the bond.

After considering that opinion we have much doubt of its being a precedent in support of the decision of the trial justice in the instant case; but it is clearly not inconsistent therewith.

The third case cited by the trial justice in the instant case is *Women's Hospital* v. *United States Fidelity & Guaranty Co.*, 177 Md. 615, 11 A. 2d 457. In that case, which was decided upon the issues raised by a demurrer to the declaration, the following were the important facts alleged: The

contractor entered into a written contract with the Hospital for the Women of Maryland, a corporation which owned the real estate involved, whereby the contractor agreed to make certain additions and alterations to the hospital buildings; and the contractor executed, for the faithful performance of the contract, a bond to the owner, with surety and subject to certain conditions, the vital one being that the obligors "shall pay all just debts for labor and materials incurred through sub-contract or in any other manner, by or on behalf of the principal", meaning the contractor.

The action was brought, in the name of the obligee on the bond, against the principal and surety, to compel them to pay to Robert S. Green, Inc., the equitable plaintiff, the sum due to that plaintiff by a subcontractor, for various materials and supplies which were necessary for the performance of the subcontract and which had been furnished by that plaintiff to the subcontractor and used by the latter for the additions and alterations to the hospital buildings, but for which the equitable plaintiff had not been paid.

The supreme court decided in favor of the defendants, on the ground set forth on page 620 (460) by the judge who wrote the opinion, as follows: "It seems to me in the instant case that effect must be given to the words 'incurred through sub-contractors, or in any manner, by or on behalf of the principal.' The 'by or on behalf of the principal' is a restrictive term. If the meaning and intent of the bond was to cover all just debts for labor and material incurred through sub-contractors or in any other manner, as contended for by the plaintiff, the clause should have stopped there, but it added the definitely restrictive provision limiting the above to those incurred 'by or on behalf of the principal'."

Because of the language which is last above quoted in the extract from the opinion in the Maryland case and upon which the final decision was based, that case is not a precedent in favor of a decision for either of the parties in the

instant case. But it does support the rule, which we are convinced is the correct one to be applied herein, namely, that all the pertinent language in the bond should be carefully considered in determining whether the plaintiff's claim is covered by the bond.

The plaintiff in the instant case strongly relies upon the opinion in the case of *Hill* v. *American Surety Co.*, 200 U. S. 197, which was decided upon a demurrer to the plaintiffs' petition, corresponding to a declaration under our procedure. They brought their action as partners against the surety company as surety upon a bond given to the United States by a general contractor, a corporation, to secure its performance of its contract with the United States for the construction of four observation towers for an agreed compensation.

This bond was given, under the requirements of the Heard Act, so called, the condition to which it was subject being, in substance, that it would be void if the contractor would fully perform all the conditions and agreements in that contract and would promptly make full payments to all persons supplying it with labor or materials in the prosecution of the work provided for in that contract. The contractor entered into a subcontract with another corporation for certain portions of the work and this latter corporation, in the performance of its subcontract, employed the plaintiffs to perform, and they did perform, a part of the work covered by this subcontract. For this work so performed by the plaintiffs, the subcontractor had agreed to pay them a certain sum but had paid them only about one half of it.

The court decided in favor of the plaintiffs but rested its decision squarely upon the terms of the Heard Act and its purpose as declared in its title: "For the protection of persons furnishing materials and labor for the construction of public works." After quoting this language it said on page 203: "If literally construed, the obligation of the bond might be limited to secure only persons supplying labor or materials directly to the contractor, for which he would

be personally liable. But we must not overlook, in construing this obligation, the manifest purpose of the statute to require that material and labor actually contributed to the construction of the building shall be paid for and to provide a security to that end."

After referring also to some other language in the statute, it says, at page 204: "Language could hardly be plainer to evidence the intention of Congress to protect those whose labor or material has contributed to the prosecution of the work. There is no language in the statute nor in the bond which is therein authorized limiting the right of recovery to those who furnish material or labor directly to the contractor, but all persons supplying the contractor with labor or materials in the prosecution of the work provided for in the contract are to be protected. The source of the labor or material is not indicated or circumscribed. It is only required to be 'supplied' to the contractor in the prosecution of the work provided for. How supplied is not stated, and could only be known as the work advanced and the labor and material are furnished." This case was cited and followed in *Mankin* v. *Ludowici-Celadon Co.*, 215 U. S. 533.

By reason of the language above quoted and other language in the opinion, it seems clear to us that the case is not an authority in favor of the plaintiff in the instant case, in which the bond involved was not required, or its terms controlled, by any statute, and which must be decided purely on common-law principles. That it must be so decided is stated in the agreed statement of facts.

In the instant case the pertinent language of the condition of the bond and the pertinent language of the later paragraph of the bond, with the most important parts italicized by us, are as follows: "if . . . the said Principal shall promptly pay for all materials furnished . . . *in the prosecution of the work* included in . . . the aforesaid contract . . . ." and "This Bond is made for the use and benefit of all persons, firms and corporations, who may furnish any material, . . . *for or on account of said contract,* . . . ."

As shown by the agreed statement, the plaintiff sold to the subcontractor Conway the materials, for which it is now seeking to recover from the surety on the bond, and extended credit solely to him; and it delivered them to him at the building site, evidently for his sole use in the performance of his subcontract, and without any reliance on the bond or even any knowledge of it, and without any notice to the contractor or his surety until after the contractor had, in the regular course of things, paid Conway in full for the work and materials supplied by him in the performance of his subcontract, including these materials.

Therefore it seems clear to us that these materials were not, by the plaintiff, furnished "in the prosecution of the work included in . . . the aforesaid contract" and were not furnished by the plaintiff "for or on account of said contract."

Hence we are of the opinion that the plaintiff has no right, in this action against the surety on the contractor's bond, to recover for these materials, and that the decision of the trial justice in favor of the defendant was correct.

The plaintiff's exception is overruled and the case is remitted to the superior court for entry of judgment for the defendant.

*Francis J. O'Brien,* for plaintiff.

*William S. Flynn, Christopher J. Brennan,* for defendant.